# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RAYMOND ALVIA LAWSON,<br><br>          Plaintiff,<br><br>     vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | No. 2:15-cv-00215-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 20 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 20. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 20).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

1  gainful activity," the Commissioner must find that the claimant is not disabled.  20

2  C.F.R. § 416.920(b).

3       If the claimant is not engaged in substantial gainful activity, the analysis

4  proceeds to step two.  At this step, the Commissioner considers the severity of the

5  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6  "any impairment or combination of impairments which significantly limits [his or

7  her] physical or mental ability to do basic work activities," the analysis proceeds to

8  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9  this severity threshold, however, the Commissioner must find that the claimant is

10 not disabled.  20 C.F.R. § 416.920(c).

11      At step three, the Commissioner compares the claimant's impairment to

12 severe impairments recognized by the Commissioner to be so severe as to preclude

13 a person from engaging in substantial gainful activity.  20 C.F.R. §

14 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15 enumerated impairments, the Commissioner must find the claimant disabled and

16 award benefits.  20 C.F.R. § 416.920(d).

17      If the severity of the claimant's impairment does not meet or exceed the

18 severity of the enumerated impairments, the Commissioner must pause to assess

19 the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20 defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income on January 31, 2012.  Tr. 64, 164-73.  Plaintiff alleged a disability onset date beginning March 23, 2011.[1]  Tr. 38.  The application was denied initially, Tr. 64-76, and on reconsideration, Tr. 77-89.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on October 22, 2013.  Tr. 35-63.  On March 7, 2014, the ALJ denied Plaintiff's claim. Tr. 18-34.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 31, 2012, the application date.  Tr. 23.  At step two, the ALJ found Plaintiff has the following severe impairments: hepatitis C; cirrhosis; lumbar degenerative disc disease; mild right hip osteoarthritis; depressive disorder; anti-social personality disorder; methamphetamine abuse.  Tr. 23.  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals

---

[1] Plaintiff initially alleged an onset date of January 1, 1999, Tr. 65, but later amended the alleged onset date to March 23, 2011.  Tr. 38.

the severity of a listed impairment.  Tr. 24.  The ALJ then concluded that Plaintiff

has the RFC to perform light work, with the following limitations:

> [H]e can frequently climb ramps/stairs, stoop, kneel, crouch, and crawl, balance without limit, and never climb ladders/ropes/scaffolds.  The claimant should have no exposure to unprotected heights and avoid concentrated exposure to vibration.  The claimant can perform semi-skilled tasks (i.e. specific vocational preparation (SVP) of 3) and have superficial interaction with the general public and coworkers.

Tr. 25.

At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 29.  At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, the Medical-Vocational Guidelines, and the

testimony of a vocational expert, there are jobs in significant numbers in the

national economy that Plaintiff could perform, such as small products assembler,

weld inspector, and inspector packer.  Tr. 30.  Thus, the ALJ concluded Plaintiff is

not disabled as defined under the Social Security Act.  Tr. 31.

On June 22, 2015, the Appeals Council denied review of the ALJ's decision,

Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

supplemental security income benefits under Title XVI of the Social Security Act.

Plaintiff raises the following issues for review:

1.   Whether the ALJ properly determined Plaintiff was a person "closely approaching advanced age" under the Medical-Vocational Guidelines (the grids);

2.   Whether the ALJ properly discredited Plaintiff's symptom claims; and

3.   Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 15 at 8.

**A. Age Grid**

First, Plaintiff contends that the ALJ erred in concluding that Plaintiff was a person "closing approaching advanced age" rather than a person of "advanced age." ECF No. 15 at 8-9.  Plaintiff asserts that the ALJ would have been required to find Plaintiff disabled under the grids if the higher age category had been applied.  *Id*.

The grids set forth rules directing a finding of disability, based on a claimant's age, education, previous work experience, and residual functional capacity.  *See* C.F.R. Pt. 404, Subpt. P, App. 2.  The age grid contains three categories: younger persons (under age 50), persons closely approaching advanced age (50-54), and persons of advanced age (age 55 or older).  20 C.F.R. § 416.963(c)-(e).  When a claimant is within a few days or a few months of reaching an older age category (a "borderline situation"), the ALJ has discretion, but is not required to use the older age category.  *Lockwood v. Comm'r of Soc. Sec. Admin*,

616 F.3d 1068, 1071 (9th Cir. 2010); 20 C.F.R. § 416.963(b) (the age categories may not be applied mechanically).  While the ALJ is required to consider use of an older age category in a borderline situation, the ALJ does not need to explain in a written decision why an older age category was not used. *Lockwood*, 616 F.3d at 1070, 1072-74.

The relevant age category is determined based on a claimant's age "during the period that [the agency] must determine if [a claimant] is disabled."  20 C.F.R. § 416.963(b).  The relevant adjudicative period for Plaintiff is January 31, 2012, the application date, through March 7, 2014, the date of the ALJ decision. Contrary to Plaintiff's assertion, during the relevant adjudicative period, Plaintiff did not reach the age of 54 ½ years old.  He was 51 years old when he applied and he was 53 years, three months and one week old when the ALJ rendered the adverse decision.  As a result, Plaintiff was not "within a few days to a few months of reaching" the "advanced age" age category; in fact; he was approximately one year and nine months from reaching age 55.  This did not present a borderline situation and the ALJ was not required to consider whether Plaintiff should have been treated as a person of "advanced age."

Here, Plaintiff's entire argument appears to be premised on a factual error. Inexplicably, Plaintiff argues in both his opening brief (ECF No. 15 at 8-9) and his reply brief (ECF No. 22 at 2), that he was 54 years and 4 months old on the date of

1   the ALJ's decision.[2]  Plaintiff is incorrect.  On March 7, 2014, the date of the

2   ALJ's decision, Plaintiff was 53 years, three months and one week old.[3]

3   Accordingly, the ALJ did not err in determining that Plaintiff was a "person

4   closely approaching advanced age" and not considering whether Plaintiff should be

5   considered a person of "advanced age."

6   **B. Adverse Credibility Finding**

7       Next, Plaintiff faults the ALJ for failing to provide specific findings with

8   clear and convincing reasons for discrediting his symptom claims.  ECF No. 15 at

9   9-13.  An ALJ engages in a two-step analysis to determine whether a claimant's

10  ─────────────────────

11  [2] Plaintiff was born on November 29, 1960.  ECF No. 15 at 2.

12  [3] Plaintiff continues asserting this factual error in his subsequent argument, that he

13  had turned age 55 prior to the Appeals Council issuing its final order denying

14  request for review on June 22, 2015.  First, Plaintiff's argument is factually

15  incorrect.  On June 22, 2015, Plaintiff was 54 years, six months, and three weeks

16  old.  Again, he was not "within a few days to a few months" of reaching age 55.

17  *See* 20 C.F.R. § 416.963(b).  Second, Plaintiff cites no authority for the proposition

18  that the relevant adjudicative period ends as of the date of the Appeals Council's

19  final order denying request for review, as opposed to the date of the ALJ's

20  decision.

testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not credible. Tr. 26-28.

### 1. Lack of Objective Medical Evidence

First, the ALJ found that the objective medical evidence did not support the degree of physical limitation alleged by Plaintiff. Tr. 26-27. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§

404.1529(c)(2).  Minimal objective evidence is a factor which may be relied upon

in discrediting a claimant's testimony, although it may not be the only factor.  *See*

*Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  Here, the ALJ set out, in

detail, the medical evidence contradicting Plaintiff's claims of disabling back pain;

ultimately concluding that "treatment records are inconsistent with the alleged

severity" of Plaintiff's physical symptoms.  Tr. 26.  For example, as noted by the

ALJ, near the amended onset date, despite claims of low back pain, Plaintiff had

largely unremarkable physical exams.  Tr. 26 (citing Tr. 261-62).  During an ER

visit in March 2011, there was noted mild tenderness to palpation to the low back

and over the SI joints.  Tr. 26.  However, lumbar imaging showed "minimal

degenerative changes from L3 to S1 otherwise unremarkable."  Tr. 262-64.  The

ALJ observed that during a subsequent examination four days later, the

examination results were minimal.  Tr. 26.  Plaintiff had normal deep tendon

reflexes in the upper and lower extremities, no cervical or thoracic tenderness, no

paraspinous muscles in the lumbar region, midline tenderness, but no bony

abnormalities, no hip pain, no pain with straight leg raises, and was diagnosed with

acute lumbosacral strain.  Tr. 26, Tr. 274-76.

      The ALJ further noted that subsequent treatment records did not show signs

of significant worsening of Plaintiff's condition.  Tr. 26.  Subsequent images of the

lumbar spine showed "stable mild degenerative spondylosis" of the lumbar spine

1  without evidence of acute fracture or dislocation and minimal degenerative

2  osteoarthritis of the right hip.  Tr. 26 (citing Tr. 366).  In a June 2011 examination,

3  Plaintiff walked without a limp, was able to change positions without difficulty,

4  displayed full range of back motion, and had negative straight leg raise in the

5  supine position.  Tr. 26 (citing Tr. 355-58).  At a July 2011 ER examination,

6  Plaintiff "ambulated with a normal gait."  Tr. 26 (citing Tr. 299).

7       The ALJ further noted that a May 2012 CT scan of the lumbar spine

8  revealed normal alignment without fractures or evidence of spondylosis.  Tr. 26

9  (citing Tr. 369).  The ALJ did acknowledge that the CT scan indicated a suspected

10  right L2-3 broad-based disc protrusion contacting the right existing L2 nerve root;

11  at the L4-5 level, a central disc protrusion was seen with mild central canal stenosis

12  and mild to moderate left and moderate right neural foraminal stenosis, which may

13  have impinged on the L4 foraminal nerve roots.  Tr. 26 (citing Tr. 369).  While

14  there was mention of an antalgic gait in the record, the ALJ noted that it was not

15  recurring.  Tr. 27 (citing Tr. 344, 363).  The ALJ noted that although there was a

16  mention of a positive straight leg raise on the right in the supine position, this also

17  was not recurring.  Tr. 27 (citing Tr. 362, 330).

18       After the hearing in 2014, the ALJ ordered a consultative examination and

19  imaging, and x-rays of Plaintiff's hips came back negative.  Tr. 27 (citing Tr. 48-

20  49, 54, 413).  During the examination, Plaintiff had a normal gait, negative straight

leg testing in both seated and supine positions, and was able to sit comfortably and move about the examination room without obvious discomfort. Tr. 409. The examiner noted no tenderness or spasm of the spine. Tr. 409. Although Plaintiff did have a slightly reduced range of motion of the cervical and dorsolumbar spine, he could ambulate at an average pace without difficulty and he had a full range of motion of the hips. Tr. 409-10. He had a full range of motion in all other areas, including his hip joints. Tr. 409. Here, the ALJ reasonably concluded that Plaintiff's subjective allegations were not supported by the medical record.

Similarly, the ALJ noted that Plaintiff's medical records did not substantiate his other subjective claims, specifically regarding liver pain, abdominal pain, and fatigue. Tr. 27. The ALJ noted that there was scant evidence to support the claim. For example, the ALJ noted that in a May 2011 examination, Plaintiff showed no signs of hepatic enlargement. Tr. 27 (citing Tr. 353). The next month, Plaintiff discontinued complaining of liver pain. Tr. 355. The treatment records documented only brief mention of headaches, despite Plaintiff's allegations of three to four headaches a month lasting for days. Tr. 27 (citing Tr. 343-44 (isolated complaint of neck pain in March 2012)).

The Court notes that the ALJ's decision acknowledges evidence that could be interpreted as favorable to the Plaintiff, including a 2012 CT scan. Tr. 27. However, the medical evidence of record was susceptible to more than one rational

conclusion, and therefore the ALJ's conclusion as to the inconsistencies between

Plaintiff's alleged physical impairments, and the overall record, must be upheld.

*Burch*, 400 F.3d at 679; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

1995) ("[t]he ALJ is responsible for determining credibility").

*2. Gaps in Treatment*

Next, the ALJ found Plaintiff's symptom complaints less than credible

because there were significant gaps in his treatment history.  Tr. 27.  The medical

treatment a Plaintiff seeks to relieve his symptoms is a relevant factor in evaluating

the intensity and persistence of symptoms.  20 C.F.R. §§416.929(c)(3)(iv), (v).

An ALJ is permitted to consider lack of treatment in his credibility determination.

*Burch*, 400 F.3d at 681.  Moreover, "in assessing a claimant's credibility, the ALJ

may properly rely on 'unexplained or inadequately explained failure to seek

treatment or to follow a prescribed course of treatment.'"  *Molina*, 674 F.3d at

1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).

As the ALJ noted, Plaintiff complained of right hip pain in June 2011, yet

Plaintiff did not seek additional medical care or treatment for pain until March

2012.  Tr. 27 (citing Tr. 355-58, Tr. 330-31).  The ALJ identified another

significant gap in treatment.  After seeking treatment in April 2012 and obtaining

imaging in May 2012, Plaintiff sought no further medical care.  Tr. 27 (citing Tr.

348-79).  At the hearing in October 2013, Plaintiff confirmed he had not sought

any medical care since April 2012.  Tr. 39-40.  The ALJ further observed that at a consultative examination in 2014, Plaintiff stated he was not taking any medication related to his impairments.  Tr. 27 (citing Tr. 407).  The ALJ concluded that "[s]uch a gap in treatment puts the degree to which [Plaintiff] was actually limited by symptoms into question."  Tr. 27.

Plaintiff contends that he could not afford medical care because he was uninsured.  ECF No. 15 at 10.  Disability benefits may not be denied because of the claimant's failure to obtain treatment she cannot obtain for lack of funds.  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  Here, however, the ALJ specifically considered the financial considerations and found that "[a]lthough financial constraints may have impacted his ability to obtain care, one would still expect to find some degree of effort to alleviate symptoms if they had been as limiting as alleged."  Tr. 27.  The record supports the ALJ's conclusion.  Here, as Defendant notes, Plaintiff admitted that he had not applied for or followed up on medical care that was available to him, and it appeared he may have been insured by the state.  Tr. 47-48, 52-53.  More importantly, even if Plaintiff could not seek medical care from the clinic, he still could seek assistance at the emergency room, which he had done in the past.  *See, e.g.*, Tr. 229-31 (March 4, 2010 ER visit for shortness of breath and cough); Tr. 236-38 (March 15, 2010 ER visit for right elbow pain); Tr. 239-41 (March 30, 2010 ER visit for shortness of breath and cough); Tr. 245-46

(April 12, 2010 ER visit for laceration); Tr. 247-48 (April 29, 2010 ER visit for swelling in elbow).  Given this record, the ALJ's conclusion that the gaps in Plaintiff's treatment history with respect to his back and hip complaints undermined the credibility of his symptom claims was reasonable.

Moreover, as of 2014, the ALJ noted that Plaintiff was taking no medication for his impairments.  Tr. 27 (citing Tr. 407).  Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment).  These were clear and convincing reasons to discredit Plaintiff's symptom claims.

### 3. Inconsistent Statements Regarding Substance Abuse

The ALJ found that Plaintiff's credibility was undermined by his misrepresentations and inconsistent statements regarding his substance abuse.  Tr. 27-28.  An ALJ may support an adverse credibility finding by citing to inconsistencies in the claimant's testimony, prior inconsistent statements and general inconsistencies in the record.  *Thomas*, 278 F.3d at 958-59 (inconsistencies in the claimant's testimony is properly considered); *Tommasetti*, 533 F.3d at 1039 (prior inconsistent statements may be considered); *Molina*, 674 F.3d at 1112 (an

1  ALJ may support an adverse credibility finding by citing to general inconsistencies

2  in the record).  Moreover, an ALJ may properly rely on a lack of candor with

3  respect to substance use when assessing credibility.  *Thomas*, 278 F.3d at 959

4  (finding that lack of candor regarding substance abuse supported the ALJ's

5  negative conclusions about the claimant's physical description of her pain).

6      For example, the ALJ noted that in May 2011, Plaintiff admitted to recently

7  using methamphetamine.  Tr. 28 (citing Tr. 355).  However, Plaintiff subsequently

8  denied drug use at a July 15, 2011 ER visit, but his urine screen tested positive for

9  marijuana and methamphetamine.  Tr. 28 (citing Tr. 298-301).  Then in May 2012,

10 during a psychological examination, Dr. Arnold reported that Plaintiff "was vague

11 regarding his last methamphetamine use but stated it was within the past year."  Tr.

12 397.  As the ALJ noted, three weeks earlier, on April 26, 2012, Plaintiff tested

13 positive for methamphetamine, amphetamine, ecstacy, and marijuana.  Tr. 363.[4]

14 _____

15 [4] There is additional evidence in the record regarding Plaintiff's lack of candor

16 regarding his substance abuse.  During the May 2012 examination with Dr. Arnold,

17 Plaintiff also was not candid regarding his marijuana use.  "When asked about his

18 marijuana use history, he stated he does not use it because 'it makes me dumber.'"

19 Tr. 397.  Similar to his methamphetamine use, Plaintiff tested positive for

20 marijuana three weeks prior to his evaluation with Dr. Arnold.  Tr. 363.  Moreover,

Plaintiff contends that the ALJ must cite "more than a history of substance abuse to discredit a claimant's testimony of a mental disability." ECF No. 15 at 10. Here, the ALJ reasonably relied on Plaintiff's misrepresentations and inconsistent statements regarding his substance abuse in assessing his credibility. This was a clear and convincing reason to discredit his symptom claims.

*4. Activities of Daily Living*

The ALJ found the limitations alleged by Plaintiff were inconsistent with his activities of daily living. Tr. 27. Evidence about daily activities is properly considered in making a credibility determination. *Fair*, 885 F.2d at 603. A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) the claimant "is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603)). "The ALJ must make

---

on April 26, 2012, Defendant underwent a disability reevaluation, during which he reported he had used methamphetamine two days prior, but denied any other drug use. Tr. 361. As mentioned previously, he tested positive for methamphetamines, amphetamines, ecstacy, and marijuana; and he "appeare[d] to be intoxicated." Tr. 363.

'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch*, 400 F.3d at 681).  A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

Here, Plaintiff claimed that he avoids using stairs, that he can stand for maybe five minutes, that he has trouble bending and squatting, and that he has a hard time getting around.  Tr. 26.  Further Plaintiff testified that he is tired a lot, indicating that he sits down to rest.  Tr. 26.  He also stated that he has headaches three to four times a month, nothing they last for a couple of days.  Tr. 26.  Here, the ALJ observed that Plaintiff indicated he uses buses for transportation, suggestive of some capacity to concentrate and persist, as well as be around others. Tr. 28.  Plaintiff indicated that he attended to his personal care, did his own laundry, prepared his own meals and his daily activities include painting and reading.  Tr. 28 (citing Tr. 397).  The ALJ failed to demonstrate how these activities contradicted Plaintiff's other testimony or that he was able to spend a substantial part of his day engaged in these activities and that these activities are transferable to a work setting.  Therefore, this reason fails to meet the specific, clear and convincing standard.

Nonetheless, in light of the other permissible reasons the ALJ provided for discrediting Plaintiff's testimony, this Court does not find the ALJ has committed

reversible error.  *See Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." (citations omitted)); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

**C. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly considered the medical opinions of examining psychologist John Arnold, Ph.D. and other medical providers.  ECF No. 15 at 13-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.*  "In addition, the regulations give more weight to

1  opinions that are explained than to those that are not, and to the opinions of

2  specialists concerning matters relating to their specialty over that of

3  nonspecialists." *Id*. (citations omitted).

4      If a treating or examining physician's opinion is uncontradicted, an ALJ may

5  reject it only by offering "clear and convincing reasons that are supported by

6  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

7  "However, the ALJ need not accept the opinion of any physician, including a

8  treating physician, if that opinion is brief, conclusory and inadequately supported

9  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

10 (internal quotation marks and brackets omitted).  "If a treating or examining

11 doctor's opinion is contradicted by another doctor's opinion, an ALJ may only

12 reject it by providing specific and legitimate reasons that are supported by

13 substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

14      *1.  Dr. Arnold*

15     On May 2, 2012, Dr. Arnold evaluated Plaintiff, Tr. 396-404, and diagnosed

16 Plaintiff with major depressive disorder, recurrent mild to moderate; amphetamine

17 dependence early full remission; r/o pain disorder.  Tr. 396.  Dr. Arnold opined

18 that Plaintiff was capable of understanding and carrying out simple instructions,

19 noting that he could concentrate for short periods; he could complete simple tasks

20 without close supervision, and not disrupt others; he would work best in positions

that had minimal interactions with others.  Tr. 397.  Dr. Arnold assessed a GAF of

54, indicating moderate symptoms.  Tr. 396.

Because Dr. Arnold's opinions regarding the most severe limitations were

contradicted by Dr. Bailey, Tr. 85-87, the ALJ was required to provide specific and

legitimate reasons for rejecting portions of Dr. Arnold's opinion.  *Bayliss*, 427 F.3d

at 1216.

First, the ALJ gave little weight to Dr. Arnold's opinion because the level of

severity implicated by it was inconsistent with Dr. Arnold's contemporaneous

mental status examination and clinical observations.  Tr. 29.  A medical opinion

may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is

inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.

Moreover, a physician's opinion may be rejected if it is unsupported by the

physician's treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.

2003) (affirming ALJ's rejection of physician's opinion as unsupported by

physician's treatment notes).  As the ALJ noted, Plaintiff performed within the

average range on the mini mental status exam, scoring 26 of 30 points.  Tr. 29

(citing Tr. 401).  While Plaintiff refused to perform serial 7 subtractions, Plaintiff

did serial 3 additions without error; followed a three-step command; and he

performed within normal limits on the Trail Making Test, Part A and Part B.  Tr.

29 (citing Tr. 400-01).  Further, the ALJ noted that Plaintiff had a restricted affect

and circumstantial thought content, but appeared alert, displaying normal speech and full eye contact.  Tr. 29 (citing Tr. 400-01).  Here, the ALJ reasonably determined that the MSE results and clinical findings did not support the level of limitations opined by Dr. Arnold.  This was a specific and legitimate reason to reject the opinion.

Second, the ALJ discounted Dr. Arnold's opinion because he relied on Plaintiff's self-reported symptom testimony, which the ALJ properly found not to be credible.  Tr. 29.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604.  As discussed *supra*, the ALJ did not err in discrediting Plaintiff's symptom complaints.

Plaintiff contends that the ALJ disregarded Dr. Arnold's observations and findings that justified the limitations.  ECF No. 15 at 14.  Specifically, Plaintiff asserts that Dr. Arnold "personally observed" various symptoms, such as hopelessness, sleep disturbances, racing thoughts, poor concentration and memory, and interpersonal difficulty.  ECF No. 15 at 14.  Here, Dr. Arnold's evaluation consisted of an interview of Plaintiff and a personality assessment inventory, which is a personality test based on self-report.  It is apparent from reading Dr. Arnold's report that it was based in substantial part on Plaintiff's interview and

1  thus on the discredited self-report of Plaintiff.  Tr. 396-97.[5]  This was another

2  specific and legitimate reason to give limited weight to Dr. Arnold's opinions.

3         Third, the ALJ gave Dr. Arnold's opinions less weight because Plaintiff was

4  not forthcoming about the extent of his methamphetamine use at this

5  psychological/psychiatric evaluation.  Tr. 29.  The record supports the ALJ's

6  finding.  *See Coffman v. Astrue*, 469 Fed. App'x 609, 611 (9th Cir. 2012)

7  (affirming ALJ's rejection of examining psychologist's opinion, in part, due to the

8  fact that "plaintiff periodically concealed" his substance abuse from providers);

9  *Serpa v. Colvin*, 2013 WL 4480016, *8 (E.D. Wa., Aug. 19, 2013) (affirming

10  ALJ's rejection of a physician's opinion because it was made without knowledge

11  of the claimant's substance abuse and narcotic-seeking behavior).  As noted above,

12  when Dr. Arnold inquired about Plaintiff's methamphetamine use, "[Plaintiff] was

13  vague regarding his last methamphetamine use but stated it was within the past

14  year."  Tr. 397.  As Defendant notes, Plaintiff had tested positive for

15  _____

16  [5] Under the section titled "Clinical Interview," Dr. Arnold reported that "[Plaintiff]

17  believes his most recent depression began in 2011 as he is experiencing severe

18  physical pain"; "as a child, he reportedly witnessed domestic violence in the

19  home"; "he has difficulty getting along with authority"; "he does not trust many

20  people and prefers to isolate himself from others."  Tr. 397.

1   methamphetamines, amphetamines, ecstasy, and marijuana three weeks before the

2   evaluation.[6]  The ALJ reasonably relied on Plaintiff's lack of candor regarding his

3   substance abuse in giving Dr. Arnolds' opinion weight.  This was another specific

4   and legitimate reason to reject the assessed mental limitations.[7]

5       *2.  Other Medical Opinion Evidence*

6       Next, Plaintiff generally contends that "the ALJ also chipped away at the

7   disability evidence contained in the opinions of [sic] the ALJ actually adopted,"

8   which Plaintiff argues "includes portions of the opinions of: Robert Bernardez-Fu,

9   M.D.; A. Peter Weir, M.D.; and Dr. Jahnke."  ECF No. 15 at 15.  Plaintiff has

10

_____

11  [6] Plaintiff also was not candid regarding his marijuana use.  According to Dr.

12  Arnold, "[w]hen asked about his marijuana use history, he stated he does not use it

13  because 'it makes me dumber.'"  Tr. 397.  Similar to his methamphetamine use,

14  Plaintiff tested positive for marijuana three weeks prior to his evaluation with Dr.

15  Arnold.

16  [7] Plaintiff argues that his statement to Dr. Arnold that he had used

17  methamphetamine approximately a year prior was accurate, contending that

18  Plaintiff tested positive for methamphetamine ten months earlier in July 2011.

19  ECF No. 15 at 15.  However, Plaintiff tested positive both in July 2011, Tr. 298-

20  301, and again in April 2012, Tr. 363.

made no argument about any of the medical opinions, what limitations were supposedly not adopted and incorporated into the RFC, or how any alleged error was harmful.  Here, Plaintiff fails to identify with specificity any discrepancy between these medical opinions and the RFC assessed by the ALJ.  Thus, the Court declines to address this issue.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing).

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED.**

2.  Defendant's motion for summary judgment (ECF No. 20) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE THE FILE.**

DATED this 29th day of March, 2017.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE